## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **CURTIS MASON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 07 C 4763** |
| | ) | |
| **v.** | ) | **Magistrate Judge Morton Denlow** |
| | ) | |
| **CITY OF CHICAGO,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This case comes before the Court on Plaintiff's first motion *in limine* filed by Plaintiff Curtis Mason ("Plaintiff" or "Mason") against Defendant City of Chicago ("Defendant" or "City"). This Court held oral argument on June 11, 2009, at which time the Court granted this motion *in limine*, thereby barring bar all reference to Plaintiff's use of marijuana on the day of the incident, and barring Defendant's expert witness, Dr. Joel Silberberg ("Dr. Silberberg"), from testifying about the possible effects of marijuana on Plaintiff on the day of the incident. This memorandum opinion and order provides a more complete explanation for the Court's oral ruling.

# I. BACKGROUND FACTS

For purposes of this motion, the Court relies upon the facts as set forth in Plaintiff's First Amended Complaint; Defendant City of Chicago's Answer to Plaintiff's First Amended Complaint; and the parties' briefs.[1]

## A.      Events Surrounding Plaintiff's Arrest

On January 13, 2007, Chicago Police pulled over the car in which Plaintiff was a passenger for a traffic violation.  Plaintiff alleges that during the stop, Chicago Police officers ("Officers") arrested and beat him without justification.  Plaintiff claims he was kneed in the eye while lying handcuffed on the ground.  Plaintiff claims he suffered severe physical injuries and emotional distress as a result of the Officers' conduct.  The sole remaining Defendant, the City of Chicago, denies all charges.  Defendant contends that the Officers used force on Plaintiff to take him down to the ground when Plaintiff reached in his shirt while being searched.  The Officers feared that Plaintiff was reaching for a weapon. Neither the traffic stop nor the arrest involved the issue of drugs.  There was never any mention of drugs in any of the police reports.

## B.      Background Regarding Plaintiff's Use of Marijuana on the Date of the Incident

During discovery, Plaintiff testified that he took "three to four puffs" of a marijuana cigarette three hours before his encounter with the police.  *See* Dkt. 123, at 3 (citing Pl. Ex.

---

[1] Plaintiff's First Amended Complaint is Dkt.  29; Defendant's Answer to Plaintiff's First Amended Complaint is Dkt. 58; Defendant's memorandum in support of its motions *in limine* is Dkt.  122; Plaintiff's motions *in limine* are Dkt.  123-133; Defendant's submissions in response to Plaintiff's motions *in limine* are Dkt. 134-137; and Plaintiff's submissions in response to Defendant's motions *in limine* are contained in Dkt. 140.

A (Mason Dep.) at 77-79). Plaintiff claims he was not under the influence of marijuana at the time of the incident. All of the Officers' contemporaneous reports state Plaintiff was not intoxicated. Specifically, Plaintiff contends there is "absolutely no evidence in the record" that he was impaired by, or feeling any effects of, marijuana, at the time of the incident. Dkt. 123, at 3. Plaintiff relies upon the following: (1) the five sworn police reports the arresting officers (Officers Michael Garza ("Garza") and Elizabeth Briggs Ayala ("Briggs")) prepared, none of which indicate Plaintiff was under the influence of drugs (Pl. Ex. B); (2) the testimony of Garza and Briggs at Plaintiff's criminal trial, as well as during their depositions in connection with this case, during which they "said nothing" about Plaintiff having been under the influence of drugs; (3) evidence that the officers who admitted Plaintiff to the lockup the night of his arrest did not report that he was under the influence of alcohol or drugs (Pl. Ex. B, arrest report at p. 6); and (4) evidence that none of nine Officers who were on the scene of Plaintiff's arrest, including Garza and Briggs, stated Plaintiff or his girlfriend were under the influence of drugs or were suspected of being under the influence. Pl. Ex. C (Interrogatory 12). There is no evidence of whether or how much marijuana was in Plaintiff's system at the time of the incident.

**C.      Background Regarding Defendant's Expert Dr. Joel Silberberg**

Defendant sought to call an expert witness, Dr. Joel Silberberg, a psychiatrist with the Northwestern Medical Faculty Foundation in Chicago. Defendant sought to use Dr. Silberberg to render his opinion about the effects of marijuana on Plaintiff at the time of his encounter with the Chicago Police. Specifically, in his Rule 26(a)(2) report, Dr. Silberberg

3

states cannabis alone, as well as combined with Plaintiff's schizotypal personality features, can cause problems with memory and concentration, time distortion, paranoia and impaired judgment leading to a contested arrest. Def. Ex. B, at p. 15, 19.

## II. LEGAL STANDARDS

This Court will discuss the applicable motion *in limine* legal standard, and will then apply it and the specific legal standards in turn below.

### A. Motions *in Limine*

A motion *in limine* is a request for the court's guidance concerning an evidentiary question. *Wilson v. Williams*, 182 F.3d 562, 570 (7th Cir. 1999); *Kiswani v. Phoenix Security Agency, Inc.*, 247 F.R.D. 554, 557 (N.D. Ill. 2008). The Court may give such guidance by issuing a preliminary ruling regarding admissibility. *Wilson,* 182 F.3d at 570-71. Trial judges are authorized to rule on motions *in limine* pursuant to their authority to manage trials, even though such rulings are not explicitly authorized by the Federal Rules of Evidence. *Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984). Judges have broad discretion when ruling on motions *in limine. Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). However, evidence may be excluded on a motion *in limine* only when it is inadmissible on all potential grounds. *Townsend v. Benya*, 287 F. Supp. 2d 868, 872 (N.D. Ill. 2003). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Hawthorne Partners v. AT&T Techs., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993). Thus, the party moving to exclude evidence *in limine* has the burden

4

of establishing the evidence is not admissible for any purpose. *Robenhorst v. Dematic Corp.*, 2008 WL 1821519, at *3 (N.D. Ill. April 22, 2008).

Denial of a motion *in limine* does not mean all evidence contemplated by the motion will be admitted at trial. *Hawthorne*, 831 F. Supp. at 1401. Rather, denial means the court cannot determine whether the evidence in question should be excluded outside of the trial context. *United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989). A ruling on a motion *in limine* is not necessarily final. *Townsend*, 287 F. Supp. 2d at 872. "The ruling is subject to change when the case unfolds," particularly if the actual testimony differs from what was proffered. *Luce,* 469 U.S. at 41. "Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling." *Id.* at 41-42.

## B.    Admissibility of Expert Testimony

The legal standard for the admission of expert testimony is well-established. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court stated a district court has a "gatekeeping role" of ensuring an expert's testimony is both reliable and relevant. 509 U.S. 579, 597 (1993). In the Seventh Circuit, the principles set forth in *Daubert* and Rule 702 of the Federal Rules of Evidence ("Rule 702") govern the admission of expert testimony. *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007). Rule 702 requires expert testimony must satisfy the following standard:

> If scientific, technical, or other specialized knowledge will assist
> the trier of fact to understand the evidence or to determine a fact

5

in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Preliminary questions concerning the qualifications of an expert witness or the admissibility of evidence are determined by the court. Fed. R. Evid. 104(a).

The party that proffers an expert's testimony bears the burden, by a preponderance of the evidence, of establishing its admissibility. *Dukes v. Illinois Cent. R. Co.*, 934 F. Supp. 939, 946 (N.D. Ill. 1996). "The focus of the district court's *Daubert* inquiry must be solely on principles and methodology, not on the conclusions they generate." *Winters v. Fru-Con Inc.*, 498 F.3d 734, 742 (7th Cir. 2007) (quoting *Chapman v. Maytag Corp.*, 297 F.3d 682, 687 (7th Cir. 2002)).

In applying Rule 702, courts undertake a three-step analysis: the witness must be qualified "as an expert by knowledge, skill, experience, training, or education," Fed. R. Evid. 702; the expert's reasoning or methodology must be scientifically reliable, *Daubert*, 509 U.S. at 592-93; and the testimony must assist the trier of fact to understand the evidence or to determine a fact in issue. Fed. R. Evid. 702; *Ervin*, 492 F.3d at 904.

*Daubert* sets forth the following non-exhaustive list of guideposts to use to determine reliability: (1) whether the proffered theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether the theory has been evaluated in light of potential rates of error; and (4) whether the theory has been accepted in the relevant scientific community. *Ervin*, 492 F.3d at 904; *Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 869 (7th Cir. 2001) (citing *Daubert*, 509 U.S. at 593-94). "[A] court should consider a proposed expert's full range of practical experience as well as academic or technical training when determining whether that expert is qualified to render an opinion in a given area." *United States v. Parra*, 402 F.3d 752, 758 (7th Cir. 2005) *(*quoting *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000)). Furthermore, the inquiry envisioned by Rule 702 is a flexible one. *Daubert*, 509 U.S. at 594; *Winters*, 498 F.3d at 742.

### III. DISCUSSION

Plaintiff seeks to exclude all reference to Plaintiff's use of marijuana on the day of the incident and to prevent Defendant's expert witness, Dr. Silberberg, from testifying about marijuana during the jury trial. Plaintiff argues Defendant is trying to misuse an expert to interject evidence about marijuana into the trial, thereby violating Rules 401, 402, 403, 702, and 703 of the Federal Rules of Evidence as well as the standards set forth in *Daubert* for the admissibility of scientific testimony. Put simply, Plaintiff urges any opinion about the possible effects of marijuana is irrelevant and invites unfair prejudice and speculation by the jury. Defendant contends Plaintiff seeks to unfairly preclude Dr. Silberberg from offering an opinion as to the effect of marijuana on Plaintiff, urging Plaintiff's concerns are grounded

7

in questions of weight to be given to such evidence—not in questions of admissibility.

**A.     The Foundation for Relevant Evidence Concerning the Influence of Marijuana on Plaintiff Has Not Been Established.**

Plaintiff asserts because there is no evidence he was under the influence of marijuana at the time of the incident, the required foundation for relevance of evidence concerning marijuana is absent.  Specifically, Plaintiff emphasizes that he and the Officers who observed him state he was not intoxicated, and that Dr. Silberg does not provide a scientific opinion that he was intoxicated.

Defendant argues it has established the foundation for relevant evidence concerning the influence of marijuana.  It points to the deposition testimony of Officers Garza and Briggs regarding Plaintiff's behavior on the night of the incident.  *See* Dkt.  134-5 (Def. Ex. D, at p.  186: 9-15); Dkt.  134-4 (Def. Ex. C, at pp.  99:3-5; 115:1-7).  Defendant also points to Dr.  Silberg's deposition testimony, during which he stated he relied on the observations of Garza and Briggs, as well as on his interview with Plaintiff, Plaintiff's admissions, medical records, and his knowledge, skills, training and experience .  *See* Dkt. 134-6 (Def. Ex.  E, at pp.  203-06: 7-17; 172: 12-16;187: 13-21).  This Court agrees with Plaintiff that any testimony regarding Plaintiff's drug use should be excluded, as one of the fatal flaws with such proffered testimony is that it relies entirely upon the premise that the Officers' account of Plaintiff's behavior is true, but there is no evidence of marijuana in Plaintiff's system at the time of the incident.

Under the framework established by Rule 702 and *Daubert*, the central questions are: what is Dr. Silberg going to testify about; what methods did he use; and on what information did he base his conclusions?  *See Kunz v. DeFelice*, 538 F.3d 667, 675-76 (7th

Cir. 2008). The Court must decide whether the proffered expert testimony is "based upon sufficient facts or data" and is "the product of reliable principles and methods." *Id.* at 676 (quoting Fed. R. Evid. 702). In *Kunz*, the district court excluded the testimony of an expert witness who planned to testify about the defendant's ability to recall and narrate the events at issue, given that the defendant had admitted to using a small amount of heroin earlier in the evening. The district court found the expert's testimony unreliable because it was not based upon a sound methodology. For example, the district court noted the expert knew neither a baseline against which to judge whether the defendant was impaired, nor his habituation level (which might influence the impairing effects of the drug). The Seventh Circuit noted the expert was a "singularly unimpressive witness," highlighting the district court's findings that his credentials were "weak, at best," as he advertised falsely that he had a degree in pharmacology, but in fact lacked such a degree, and had taken only one pharmacology course. *Id.*

Here, this Court finds there is no foundation for relevant evidence concerning the influence of marijuana on Plaintiff. Plaintiff's admissions during discovery that he smoked a marijuana cigarette on the date of the incident do not come close to providing the necessary foundation to admit such highly inflammatory and prejudicial evidence. (During his deposition, Plaintiff testified that he took "three to four inhales . . . approximately three hours" before he was stopped by the Chicago Police.) Pl. Ex. A (Mason Dep.), p. 77:4 - 79:3. During Dr. Silberberg's examination of Plaintiff, Plaintiff stated he "was using [cannabis] on the day of the incident (January 13, 2007) maybe half a cigarette (cannabis)

9

about an hour before."  Pl. Ex. D (Silberberg Report), at p. 8).

Moreover, Dr. Silberberg's opinion is not based upon relevant evidence concerning the influence of marijuana on Plaintiff.  Dr. Silberberg stated he relied upon his "training, knowledge, and experience in the practice of general and forensic psychiatry; a careful review of documents supplied; psychological testing performed by Robert Hanlon, Ph. D. on January 19, 2009 to provide an objective assessment of his current psychological status; a one-hour and five minutes [sic] examination with Mr. Mason on January 27, 2009 which was prematurely terminated by Mr. Mason . . .; and a one-hour and 45 minutes [sic] continuation examination on February 17, 2009."  Pl. Ex. D (Silberberg Report), at 2. In addition, Dr. Silberberg indicated he relied upon "self-reported symptoms documented in Mr. Mason's medical record, and related [to Dr. Silberberg]" in formulating his opinions, which he indicated are corroborated by psychological testing.  *Id.* at p. 3.

This Court finds Dr. Silberberg's testimony regarding Plaintiff's condition at the time of the incident is unreliable.  Like the expert in *Kunz*, Dr. Silberberg does not know a baseline against which to judge whether Plaintiff was impaired, nor Plaintiff's habituation level, which Dr. Silberberg admits can be affected by a variety of factors.  In contrast to the *Kunz* expert, Dr. Silberberg's credentials are not questioned by Plaintiff or the Court. However, Dr. Silberberg fails to offer the type of testimony—supported by an adequate foundation as well as references to the record—required under *Daubert* in that he does not detail the facts, inferential processes, and hypotheses considered and rejected when rendering his opinion. *See, e.g., Mid-State Fertilizer Co.*, 877 F.2d 1333, 1339 (7th Cir. 1989)

(explaining what a court must look to when analyzing the adequacy of an expert's foundation). There does not exist a proper factual foundation for Dr. Silberberg to testify regarding the influence of marijuana on Plaintiff. Thus, Dr. Silberberg's testimony on the issue is inappropriate expert testimony—amounting to mere speculation. *See, e.g., Goodwin v. MTD Products, Inc.*, 232 F.3d 600 607-08 (7th Cir. 2000).

Dr. Silberberg offers additional speculation based upon objective assessments identifying Plaintiff as an individual with "schizotypal personality features" or "schizotypal traits" in opining Plaintiff was therefore among those who are "specifically at risk" for adverse side effects from marijuana. Pl. Ex. D., at 11; Def. Ex. E (Silberberg Dep.), at p. 169:3-15, 187. Dr. Silberberg found "cannabis (by itself) combined with Mr. Mason's schizotypal personality features (as per the psychological testing by Dr. Hanlon) can cause problems with memory and concentration, time distortion, paranoia and impaired judgment leading to a contested arrest with resultant physical injury to Mr. Mason." *Id.* at p. 15. Dr. Silberberg also concluded "psychological testing reflected mild but significant posttraumatic stress related to seven historical traumatic events." *Id.* at p. 18. Dr. Silberberg concluded, in part: "The pre-existing schizotypal personality features exacerbated at times by cannabis are similar to the symptoms of PTSD. In addition, the altercation with the Chicago police was aggravated by Mr. Mason's cannabis use and schizotypal personality style." *Id.* at p. 19.

As discussed above, Plaintiff has met his burden of establishing that the evidence regarding the influence of marijuana on Plaintiff's behavior is not admissible for any

purpose.  *See, e.g., Robenhorst*, 2008 WL 1821519 at *3; *Hawthorne Partners*, 831 F. Supp. at 1400.   Therefore, this Court will not permit Dr.  Silberg to testify as to topics related to Plaintiff's marijuana use.

## B.      Dr.  Silberg's Expert Opinion Concerning Marijuana Intoxication is Not Helpful to the Jury and Fails to Comply with Rule 403 of the Federal Rules of Evidence.

Plaintiff argues Dr. Silberg's proffered opinion that marijuana intoxication can (1) cause memory problems; and (2) contribute to resisting arrest is not helpful to the jury**,** and that its weak probative value is substantially outweighed by the risk of unfair prejudice. Defendant argues Dr. Silberg's opinion is helpful in that it assists the jury in understanding the City's position that Plaintiff acted in a manner consistent with one under the influence of drugs and consistent with the account provided by Officers Garza and Briggs regarding their interaction with Plaintiff.

Rule 702 allows testimony by a qualified expert if such scientific, technical, or other specialized knowledge will "assist the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702.  Expert  testimony must be relevant and factually linked to the case in order to meet Rule 702's "helpfulness" requirement.  *United States v. Gallardo*, 497 F.3d 727, 733 (7th Cir. 2007) (citing *Daubert*, 509 U.S. at 591).  In *Gallardo*, the Seventh Circuit affirmed the district court's exclusion of the defendants' expert, noting it was "precisely this factual link that [was] lacking."  *Id.*  In that case, the defendants presented no evidence that the government's witnesses were using drugs during the events to which they testified, or that they were ever addicted to drugs.  *Id.*  Thus, the court found expert testimony

12

regarding the effect of drug abuse on one's memory would not help the jury to determine any fact in issue. Moreover, the court reasoned, such expert testimony, without a factual link to the specific witness, would intrude upon the jury's role in assessing witness credibility. *Id.* In sum, the Seventh Circuit found the district court properly recognized this danger, and properly applied the *Daubert* standard when it excluded the testimony. *Id.*

This Court finds *Gallardo* is highly instructive, as a "factual link" between Dr. Silberberg's proffered testimony and the marijuana evidence does not exist. In this case, although Defendant presents evidence that Plaintiff smoked one marijuana cigarette on the date of the incident, it cannot demonstrate the requisite connection between the evidence about the effect of marijuana on Plaintiff's behavior and Dr. Silberberg's testimony.

As discussed above, this Court also finds *Kunz* highly analogous to the case at bar. In *Kunz*, the Seventh Circuit found the district court did not abuse its discretion in excluding an expert's testimony on grounds that it was unhelpful. 538 F.3d at 676. Similar to the expert in *Kunz*, whom the court found "hoped to shed light on heroin users as a group, but [] had nothing useful to say about Kunz's condition at the critical time," Dr. Silberberg cannot offer anything but purely speculative testimony about how marijuana may have affected Plaintiff's behavior at the time of the incident. Even though available evidence includes Plaintiff's own admission regarding approximately how much marijuana he used on the date of the incident—and when; objective psychological testing of Plaintiff identifying his personality traits and research regarding the effects of marijuana individuals with such traits; and the testimony of police officers regarding Plaintiff's behavior at the relevant time,

such evidence does not come close to supporting the admission of sheerly speculative and highly prejudicial testimony about the effect of Plaintiff's marijuana use on his behavior on the date in question.

Plaintiff also argues Rule 403 bars the marijuana evidence in light of the risk of unfair prejudice from introducing evidence about drugs. This Court agrees. The Seventh Circuit allows the admission of evidence that a witness has used illegal drugs in certain circumstances:

> Evidence that a witness has used illegal drugs may be probative of the witness' possible inability to recollect and relate . . . . This evidence may be admitted where the memory or mental capacity of a witness is legitimately at issue. . . . At the same time, however, there is considerable danger that evidence that a witness has used illegal drugs may so prejudice the jury that it will excessively discount the witness' testimony. . . . A court must, therefore, be chary in admitting such evidence when it is offered for the sole purpose of making a general character attack.

*Kunz v. DeFelice*, 538 F.3d 667, 677 (7th Cir. 2008) (quoting *United States v. Cameron*, 814 F.2d 403, 405 (7th Cir. 1987)). *See also Gallardo*, 497 F.3d at 733.

This Court is mindful of the dangers of introducing evidence about drugs. These concerns strike at the heart of this Court's decision to bar such evidence in this case. The mere mention of Plaintiff's drug use would be highly inappropriate. The Court finds it appropriate to bar Dr. Silberberg from testifying about the effects of marijuana on Plaintiff's behavior on the night of the incident, and from testifying regarding its effects, if any, on Plaintiff's memory of the incident. Dr. Silberberg will be barred from testifying.

This is a straightforward case that turns on two different versions of the events in question. Plaintiff claims an officer kneed him in the face while he was handcuffed and lying on the ground. Defendant contends Plaintiff was injured while resisting arrest. The case turns on the credibility of the parties involved. The question of whether Plaintiff smoked a marijuana cigarette three hours before the incident is no more probative than whether the officers drank coffee before the incident. The introduction of expert testimony or testimony concerning facts unrelated to the physical encounter would merely divert the jury from the relevant inquiry: when and how did Plaintiff suffer his injury. Marijuana plays no part in this inquiry and the introduction of such evidence serves no purpose other than to make a general character attack on Plaintiff.

Dr. Silberberg would also be barred from testifying about Plaintiff's marijuana use for the sole purpose of making a general character attack. *See, e.g., United States v. Robinson*, 956 F.2d 1388, 1397 (7th Cir. 1992) (district court allowed questioning on one

15

witness' blackouts and memory loss from past alcohol use, but refused to permit broader generalized questioning on drug use where defendants were "simply trying to suggest to the jury that people who have used drugs are more likely to tell lies"); and the effects of marijuana on Plaintiff's ability to recall the incident. *See infra*, Section D. As discussed below, while Dr. Silberberg opines that "[c]annabis influenced the escalation of conflict with the Chicago Police and Mr. Mason's memory and perception of the incident," (Pl. Ex. D (Silberberg Report), at p. 3), he admits Plaintiff's recall was "reasonable." Pl. Ex. E (Silberberg Dep.), at p. 273: 16-18. Thus, Plaintiff's memory of the incident is not at issue. *See, e.g. United States v. Mojica*, 185 F.3d 780, 789 (7th Cir. 1999) (emphasizing a district court may "refuse cross-examination [on the issue of drug use] where memory or mental capacity is not legitimately at issue and the evidence is offered solely as a general character attack"); *United States v. Cameron*, 814 F.2d 403, 405 (7th Cir. 1987).

While Defendant argues any concerns regarding admissibility of Plaintiff's drug use are addressed by the application of Rule 404(b), this Court is not persuaded. Defendant cites to *Robinson* to support this argument, but the application of Rule 404(b) in *Robinson* is readily distinguishable. *Robinson*, 956 F.2d 1388, 1394-96 (7th Cir. 1992). The *Robinson* court, which affirmed the defendants' convictions for conspiracy to distribute and possession with intention to distribute cocaine, found evidence of the defendants' prior marijuana distribution conspiracy was properly admitted under Rule 404(b). *Id.*

In sum, this Court will exclude Dr. Silberberg as an expert and bar any testimony about Plaintiff's marijuana use. *See, e.g., United States v. Neely*, 980 F.2d 1074, 1081 (7th

16

Cir. 1992) (finding defendants were not merely seeking to question a witness about the amount of marijuana he possessed at the time of his arrest to establish a necessary element of their theory of defense, but were seeking to "inject needlessly prejudicial information" challenging his truthfulness).   Defendant claims Dr. Silberberg's testimony regarding marijuana intoxication is helpful in that it assists the jury in understanding the City's position that Plaintiff acted in a manner consistent with one under the influence of drugs and consistent with Officers Garza and Briggs' account of the incident.  It is entirely apparent to the Court that Defendant is pursuing a strategy similar to the *Robinson* or *Neely* defendants, in that Defendant attempts to show that if Plaintiff was a drug user, then his truthfulness is inherently suspect.  Dr. Silberberg will not be permitted to testify in furtherance of a such a strategy.

**C.**     **Dr. Silberberg's Opinion Impermissibly Relies on Resolution of Credibility Disputes.**

Plaintiff argues that Dr. Silberberg has no basis in science upon which to opine that Plaintiff was intoxicated on the night of the incident, and that he cannot create an alternative reason to discuss marijuana by opting to believe the officers' version of events instead of Plaintiff's account.  This Court agrees that consistent with the law in this Circuit, Dr. Silberberg cannot testify as to credibility issues.  *See, e.g., Goodwin v. MTD Products, Inc.*, 232 F.3d 600, 609 (7th Cir. 2000) ("An expert cannot testify as to credibility issues.  Rather, credibility questions are within the province of the trier of fact, in this case a jury"); *United States v. Hall*, 165 F.3d 1095, 1107 (7th Cir. 1999) ("It is the exclusive province of the jury

to determine the believability of a witness . . . . An expert is not permitted to offer an opinion as to the believability or truthfulness of a witness's story").

**D.    There Exists No Foundation for Dr. Silberg's Opinion About the Effects of Marijuana on Plaintiff's Ability to Recall the Incident.**

Plaintiff contends Dr. Silberg has no foundation for his opinions about the effects of marijuana on Plaintiff's memory of the incident because he admits he cannot criticize Plaintiff's ability to recall the incident without choosing to believe the officers' account in favor of Plaintiff's account. Characterizing this issue as relevant to the weight of the evidence—not to admissibility—Defendant argues Plaintiff misleads the Court with an incomplete citation from Dr. Silberg's testimony. *See* Dkt. 134 (citing Pl. Ex. E (Silberg Dep.), at p. 273: 6-10) ("I had concern about Mr. Mason's memory particularly because he seemed to remember some things. But then, for example, he didn't seem to remember anything that happened at Christ, which didn't make sense to me")).

This Court has considered Dr. Silberg's deposition testimony and report. He testified Plaintiff's recall of incident was "reasonable." Pl. Ex. E. (Silberg Dep.) at 273: 11-18. Significantly, in response to a question regarding what memory lapses, if any, Plaintiff exhibited with respect to the incident itself, testified as follows:

> A:    They both [Officer Garza and Plaintiff] described what happened. Their memory is  different, but they both described what happened with reasonable recall.
> Q:    Mr. Mason's recall of the event was reasonable in your mind?
> A:    Both of their recalls were reasonable.

Pl. Ex. E (Silberg Dep.) at 273: 11-18.

As discussed above, this Court finds there is no foundation for Dr. Silberg's opinions about the effects marijuana can have on memory because he admits he cannot

criticize Plaintiff's ability to recall the incident without choosing to believe the officers' account in favor of Plaintiff's account. Thus, this Court bars Dr. Silberberg from testifying on the effect of marijuana on Plaintiff's ability to recall the incident.

### IV. CONCLUSION

For the reasons set forth in this Court's oral ruling on June 11, 2009, as further explained in this opinion, Plaintiff's first motion *in limine* is granted.

SO ORDERED THIS 1st DAY OF JULY, 2009.

_____
**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**


**Copies sent to:**

| | |
|---|---|
| Michael Kanovitz | Scott Jebson |
| Samantha Liskow | Ashley Kosztya |
| Arthur Loevy | Sanjay Patel |
| Jon Loevy | 30 North LaSalle Street |
| Loevy & Loevy | Suite 1400 |
| 312 North May Street, Suite 100 | Chicago, IL 60607 |
| Chicago, IL 60607 | |
| | |
| Counsel for Plaintiff | Counsel for Defendant |