# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CURTIS MASON, ) | |
| ) | |
| Plaintiff, ) | Case No. 07 C 4763 |
| ) | |
| v. ) | Magistrate Judge Morton Denlow |
| ) | |
| CITY OF CHICAGO, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

This case comes before the Court on a Rule 59 motion for a new trial, or alternatively, a *remittitur*, filed by Defendant City of Chicago ("Defendant" or "City"). On June 15 through June 22, 2009, the Court conducted a jury trial in this Section 1983 case. On June 22, 2009, the jury returned a verdict for Plaintiff Curtis Mason ("Plaintiff" or "Mason") in the amount of $625,000 against Defendant. Defendant argues it was erroneously prevented from presenting highly probative evidence at trial; or alternatively, maintains that the jury's verdict was unreasonable, clearly appears "to be the result of passion and prejudice" and thus should be remitted. For the following reasons, the Court denies Defendant's motion for a new trial, or alternatively, a *remittitur*.

### I. BACKGROUND FACTS

For purposes of this motion, the Court relies upon the facts as set forth in Plaintiff's First Amended Complaint; Defendant City of Chicago's Answer; the parties' briefs; and this

Court's memorandum opinion and order issued on July 1, 2009 ("July 1, 2009 Opinion").[1]
*See Mason v. City of Chicago*, 2009 WL 1891797 (July 1, 2009).

A. **Events Surrounding Plaintiff's Arrest**

On January 13, 2007, Chicago Police pulled over the car in which Plaintiff was a passenger for a traffic violation. Plaintiff alleges that during the stop, Chicago Police officers ("Officers") arrested and beat him without justification. Plaintiff claims he was kneed in the eye while lying handcuffed on the ground. Plaintiff claims he suffered severe physical injuries and emotional distress as a result of the Officers' conduct. Defendant denies all charges. Defendant contends the Officers used force on Plaintiff to take him down to the ground when he reached in his shirt while being searched. Neither the traffic stop nor the arrest involved the issue of drugs. There was never any mention of drugs in any of the police reports.

B. **Background Regarding Plaintiff's Use of Marijuana on the Date of the Incident**

During discovery, Plaintiff testified that he took "three to four puffs" of a marijuana cigarette three hours before his encounter with the police. *See* Dkt. 123, at 3 (citing Pl. Ex. A (Mason Dep.) at 77-79). Plaintiff claims he was not under the influence of marijuana at the time of the incident. All of the Officers' contemporaneous reports state Plaintiff was not intoxicated. Specifically, Plaintiff contends there is "absolutely no evidence in the record"

---

[1] Plaintiff's First Amended Complaint is Dkt. 29; Defendant's Answer to Plaintiff's First Amended Complaint is Dkt. 58; Defendant's motion for a new trial, or alternatively, a remittitur, is Dkt. 169. Plaintiff's response to Defendant's motion for a new trial or a remittitur is Dkt. 180. Defendant's reply in support of its motion for a new trial or a remittitur is Dkt. 180.

that he was impaired by, or feeling any effects of, marijuana, at the time of the incident. Dkt. 123, at 3. Plaintiff relies upon the following: (1) the five sworn police reports the arresting officers (Officers Michael Garza ("Garza") and Elizabeth Briggs Ayala ("Briggs")) prepared, none of which indicate Plaintiff was under the influence of drugs; (2) the testimony of Garza and Briggs at Plaintiff's criminal trial, as well as during their depositions in connection with this case, during which they "said nothing" about Plaintiff having been under the influence of drugs; (3) evidence that the officers who admitted Plaintiff to the lockup the night of his arrest did not report that he was under the influence of alcohol or drugs; and (4) evidence that none of nine Officers who were on the scene of Plaintiff's arrest, including Garza and Briggs, stated Plaintiff or his girlfriend were under the influence of drugs or were suspected of being under the influence. There is no evidence of whether or how much marijuana was in Plaintiff's system at the time of the incident.

**C.     The Jury's Verdict**

On June 22, 2009, the jury returned a verdict for Plaintiff in the amount of $625,000, against Defendant. Specifically, the jury found in favor of Plaintiff on his claims for excessive force (Count I) and malicious prosecution (Count IX); and it found in favor of Defendant, and against Plaintiff, on his claims for failure to intervene (Count V) and false arrest (Count II).

## II. LEGAL STANDARDS

**A.  Motions for a New Trial**

Defendant requests a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure.  Rule 59 provides in pertinent part:

> (a) Grounds for New Trial.  The court may, on motion, grant a new trial on some or all of the issues—and to any party—as follows: (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . .

Fed. R. Civ. P. 59(a).

**B.  *Remittitur***

A jury has "wide discretion is determining damages, so long as it has a reasonable basis." *Am. Nat'l Bank & Trust Co. v. Regional Transp. Auth.*, 125 F.3d 420, 437 (7th Cir. 1997).  "Underlying the deference to a jury's assessment of damages is the acknowledgment that the actual measure of damages is an exercise of factfinding." *Spina v. Forest Preserve District of Cook County*, 207 F. Supp. 2d 764, 771 (N.D. Ill. 2002) (citing *Cygnar v. City of Chicago*, 865 F.2d 827, 847 (7th Cir. 1989)).

In the Seventh Circuit, judicial review of jury compensatory damage awards is limited to three questions: (1) whether the award is monstrously excessive; (2) whether there is no rational connection between the award and the evidence, indicating that it is merely a product of the jury's fevered imaginings or personal vendettas; and (3) whether the award is roughly comparable to awards made in similar cases. *Farfaras v. Citizens Bank and Trust of Chicago*, 433 F.3d 558, 566 (7th Cir. 2006).

## III. DISCUSSION

**A.     There is No Basis for a New Trial.**

Defendant first argues the Court erroneously barred it from presenting evidence of Plaintiff's drug use. With respect to this argument, this Court adopts its prior ruling because Defendant's contentions do not change the Court's July 1, 2009 Opinion. This issue was fully briefed by the parties before trial and decided by the Court in Plaintiff's favor. *See Mason v. City of Chicago*, 2009 WL 1891797 (July 1, 2009). Defendants have presented no legitimate grounds for a new trial, and their request is therefore denied.

Defendant next argues evidence of Plaintiff's past drug use was relevant to the damages phase of the trial. Specifically, Defendant urges such evidence was relevant to the value of any mental or emotional pain and suffering Plaintiff claimed to have suffered as a result of his arrest. Citing Rule 402 of the Federal Rules of Evidence, Defendant argues that in order for a jury to assess Plaintiff's damages, it must be allowed to consider all evidence, included evidence about Plaintiff's health, habits and the manner in which he led his life. Defendant urges such evidence is probative of the value of any damages Plaintiff claims to have suffered as a result of his arrest, characterizing him as an "admitted lifelong abuser of marijuana." Dkt. 169, at 5.

The Court disagrees. The sole case upon which Defendant relies for this proposition, *Egebergh v. Village of Mount Prospect*, is readily distinguishable. 2004 WL 856437, at *1 (N.D. Ill. Apr. 20, 2004). In that case, the court found evidence of the plaintiff's past drug use was relevant to the damages portion of the trial, specifically to the value of the loss of

the plaintiff's life to the plaintiff himself. *Id.* In this case, unlike the plaintiff in *Egebergh*, Plaintiff is alive; moreover, any evidence regarding alleged drug use is not probative to the issue of damages, as such evidence does not "touch on the value of his life," as such evidence was found to do in *Egebergh*. In sum, evidence of Plaintiff's past drug use was properly barred during both the liability and damages phases of the trial.

**B.     The Jury's Verdict is Based on Ample Evidence and Should Therefore Not be Remitted.**

Defendant argues there is insufficient evidence to support the jury award of $625,000. The City has failed to provide any arguments seriously justifying a *remittitur*, and its motion is therefore denied. Jury awards are granted substantial deference. The Seventh Circuit has instructed that a jury's compensatory damage award should not be disturbed unless it is "monstrously excessive." The jury's award in this case is reasonable, it is rationally connected to the evidence and is roughly comparable to awards in similar cases. None of the Seventh Circuit's three factors described above support Defendant's request for a *remittitur*.

First, the jury had ample evidence with which to credit Plaintiff's version of the events. The jury determined Plaintiff's injury was caused by one or more Chicago Police Officers using unconstitutionally unreasonable force. The jury also found Plaintiff was damaged by the malicious prosecution of the charges brought against him. In so doing, the jury credited Plaintiff's version of the events over Defendant's version.

The Court rejects Defendant's argument that there were no other witnesses to the incident other than Plaintiff and his girlfriend, Kyley Johnson. The jury not only heard the testimony of third party witness Gwen Minter, who testified she observed the incident, but

it was also permitted to rely solely on Plaintiff's testimony. The jury instructions informed the jury it was free to choose to find any amount of significance (or none at all) in the quantity of witnesses to an event. Dkt. 156, at 8. In the case of divergent stories, the jury had to examine the witnesses' credibility, and it credited Plaintiff's version of the events presented over the version presented by Defendant.

Moreover, the jury's finding in Defendant's favor on the false arrest and failure to intervene claims does not demonstrate it lacked ample evidence with which to credit Plaintiff's version of events. It is logical for the jury to conclude both that numerous officers committed excessive force and that there were no additional officers present who knew the force was about to occur and could have prevented it. Plaintiff claims Officer Garza kneed him in the eye while Plaintiff was handcuffed and lying on the ground and that other officers also beat him.

In addition, an arrest based on probable cause is not inconsistent with excessive force being used during that arrest. Based on the evidence presented at trial, the jury could easily have accepted a factual scenario leading to a logical verdict for Plaintiff on excessive force and against him on false arrest. The fact that Plaintiff was not falsely arrested does not mean that excessive force was not used in making the arrest. The jury logically found that the orbital fracture suffered by Plaintiff during the arrest was the result of excessive force by the Officers.

Second, there is ample evidence of financial, physical and emotional damage to Plaintiff to support the jury's verdict. *See Gann v. Oltesvig and TTI, Inc.*, 491 F. Supp. 2d

771, 781 (N.D. Ill. 2007). Plaintiff incurred over $60,000 in medical bills. Plaintiff testified about his fear and pain during the beating, as well as in the weeks after the beating; Plaintiff and Dr. Julius Few testified about the eye complications related to Plaintiff's orbital fracture, as well as about the emotional stress Plaintiff suffered; Plaintiff and Kyley Johnson testified that Plaintiff suffered from other facial problems, including a decreased sense of smell; Plaintiff and Dr. Jack Rozental testified to Plaintiff's neurological damage; Plaintiff, Kyley Johnson and Dan Curran testified about the effects of the incident on Plaintiff's work performance; Plaintiff and other witnesses testified that he suffered emotionally, for example, when he appeared for his criminal trial and had to wait additional time due to a continuance; and Plaintiff, Kyley Johnson, Michelle Mason, Dan Curran, and Lyndell Pleasant testified to a wide range of emotional damages, including that Plaintiff's personality was transformed, that relationships with his friends and family were seriously impaired, that his previously high-level of physical activity decreased significantly, that he suffered from an irrational fear when he saw people who resembled Officer Garza, that his self-confidence was seriously diminished, and that he was afraid of being seen with his girlfriend. In sum, either the physical or the emotional set of injuries would be sufficient to conclude the verdict was not irrational.

The Court also finds Plaintiff established future mental and emotional pain that Plaintiff is reasonably certain to experience in the future. In particular, Dr. Few testified that Plaintiff's face has been scarred, and Plaintiff explained that he experienced a drastic decrease in his self-confidence as a result of having this scar. Plaintiff and a number of witnesses testified to the emotional injuries that are apparent in that Plaintiff is still a "different person." Plaintiff's testimony was supported in the testimony offered by a range of other witnesses. Even without any such evidence, the jury's verdict is amply supported by the extensive evidence of Plaintiff's past two years of serious physical and emotional damage and the pain and suffering he experienced up to the time of trial.

Finally, the jury's award is comparable to awards in similar cases. Indeed, the verdict falls within permissible boundaries, and the Court therefore rejects Defendant's suggestion that the weight of the evidence supports a compensatory award of only $200,000. *Farfaras v. Citizens Bank and Trust of Chicago*, 433 F.3d 558, 566-67 (7th Cir. 2006) ("Awards in other cases provide a reference point that assists the court in assessing reasonableness; they do not establish a range beyond which awards are necessarily excessive"). Defendant cites only one case to support this argument. In *Sanders v. City of Indianapolis*, the jury awarded the plaintiff $1.5 million in compensatory damages for an excessive force claim involving two scalp wounds, a "somewhat serious but non-blinding eye wound," soft tissue injuries, a broken knuckle, a broken leg causing a permanent limp and a diagnosis of post-traumatic stress disorder. 837 F. Supp. 959 (S.D. Ind. 1992). The trial court remitted the damages award to $78,000. *Id.* This case is readily distinguishable from *Sanders*; for example, there

was no malicious prosecution in that case, nor was there any evidence of medical expenses. In addition, in this case, the amount of the verdict is not excessive beyond reason, nor did it surpass its evidentiary basis, as described above. *Sanders* also appears to be an anomaly, as the plaintiff presented testimony of permanent physical damage and emotional distress.

Moreover, a number of recent cases serve as examples in which courts have upheld comparable—and sometimes much higher—awards, along with other comparable jury verdicts. *See, e.g., Frazier v. Norfolk & Western Ry. Co.,* 996 F.2d 922, 925-26 (7th Cir. 1993) ($2.3 million award not monstrously excessive for back injury for a plaintiff who did not require continued medical treatment or prescription pain medication and could lift objects weighing under fifty pounds); *Hallett v. Village of Richmond*, No. 05 C 50044 (N.D. Ill. June 2009) (jury awarded $450,000 in compensatory damages to the plaintiff on his excessive force claim—the only claim submitted to the jury—against officers who fractured orbital bone outside a bar); *Finwall v. City of Chicago*, No. 04 C 4663 (N.D. Ill. 2007) (jury awarded $2,025,000 for a wrongful prosecution in which Chicago police officers held the plaintiff for less than two days, and he was subsequently acquitted); *Ibanez v. Velasco*, 2002 WL 731778 (N.D. Ill. Apr. 25, 2002) (upholding a $2,500,000 compensatory award to a plaintiff who had physical injuries that were "not severe" as a result of excessive force, which included "bruising, scratches, and neck strain").

In sum, Plaintiff put forth ample evidence of damages resulting both from the officers' excessive force and from malicious prosecution. Thus, the jury's $625,000 verdict was in line with other awards under comparable circumstances and was perfectly rational in light of the evidence presented at trial.

## IV. CONCLUSION

**For the reasons set forth in this opinion, Defendant's motion for a new trial, or alternatively, a *remittitur*, is denied.**

**SO ORDERED THIS 10th DAY OF AUGUST, 2009.**

_____
**MORTON DENLOW
UNITED STATES MAGISTRATE JUDGE**

**Copies sent to:**

Michael Kanovitz
Samantha Liskow
Arthur Loevy
Jon Loevy
Loevy & Loevy
312 North May Street, Suite 100
Chicago, IL 60607

Scott Jebson
Ashley Kosztya
Sanjay Patel
30 North LaSalle Street
Suite 1400
Chicago, IL 60607

Counsel for Plaintiff

Counsel for Defendant